**FORT WAYNE COMMUNITY SCHOOLS, Plaintiff,**

v.

**FORT WAYNE EDUCATION ASSOCIATION; and United States Postal Service, Defendants.**

**Civ. No. F 89–205.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

April 12, 1990.

James Fenton, Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

Richard J. Darko, Indianapolis, Ind., Lisa A. Olson, Dept. of Justice, Civil Div., Washington, D.C., and Tina Nommay, Asst. U.S. Atty., Fort Wayne, Ind., for defendants.

### ORDER ON MOTIONS TO DISMISS AND TO ABSTAIN FROM EXERCISING JURISDICTION

ALLEN SHARP, Chief Judge.

#### I. Background

The plaintiff Fort Wayne Community Schools (School System) and defendant Fort Wayne Education Association (Teachers Union) are parties to a collective bargaining agreement. One provision of that agreement is at issue here; the pertinent provision requires the School System to carry certain Union correspondence to Fort Wayne teachers (who are Union members) through the School Corporation's in-house mail delivery system. For several years

the School System dutifully complied with the agreement by picking up and delivering the Teachers' mail as required.

The Fort Wayne School System now finds itself in a legal quandary, however. A recent decision of the United States Supreme Court, *Regents of the University of California v. Public Employment Relations Board (Regents)*, 485 U.S. 589, 108 S.Ct. 1404, 99 L.Ed.2d 664 (1988), calls into question the legality of the Schools' carriage of Union correspondence without the payment of postage. If the School System continues to fulfill its contractual duty to the Union, it may be in criminal violation of the federal statutes (interpreted in *Regents*) that grant a mail-carrying monopoly to the United States Postal Service.[1] By abstaining from its pickup and delivery obligations, however, the School may be in breach of its contract with the Teachers Union and thereby subject itself to civil damages under state law.

Upon learning of the *Regents* decision, the School System ceased its carriage of Union correspondence and notified the Teachers Union that the mail-carrying provision of their collective bargaining agreement might be invalid under the postal monopoly statutes. The Union responded by filing a grievance, alleging that the School's action violated their collective bargaining agreement. Ultimately the grievance was submitted to binding arbitration. The arbitrator's award directed the School to resume delivery of certain of the Union's interschool mail.

In response to the arbitrator's award, the School informed the Postal Service of the arbitrator's position. The Postal Service formally notified the School that delivery of Union letters under many of the circumstances stated in the award without the payment of postage would violate federal criminal law. In that event, warned the Postal Service, the School System, the Teachers Union, and all persons acting in their behalf would be subject to criminal penalties and the civil remedies provided by law and regulation.

Because the Teachers Union and the Postal Service assert diametrically opposed positions concerning the legality of the disputed mailings, the School faces the dilemma of incompatible legal obligations to the two sides. To protect itself from potential liability to either side, the School instituted this declaratory judgment action asking the court to declare the rights of all parties, and to determine which, if any, of the contested mailings the School System can lawfully carry.

Subsequently, the Teachers Union filed suit in state court seeking confirmation and enforcement of the arbitrator's award under Indiana law. The School counterclaimed and requested that the arbitrator's award be vacated or modified in a manner consistent with federal law. The Union objects to federal court review of the Schools' declaratory judgment action. The Union first argues that this court lacks subject matter jurisdiction and must dismiss the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, the Union urges that, even if this court possesses jurisdiction, it should decline review under either the *Burford* or *Colorado River* abstention doctrines.

The Postal Service, also joined as a defendant in this action, has aligned itself procedurally with the School by opposing the Teachers Union's motions to dismiss and to abstain from exercising jurisdiction. The Postal Service has counterclaimed seeking declaratory relief that the School's delivery of Union correspondence through its interschool mail system without the payment of postage violates federal law, and requesting an injunction forbidding such delivery. The Postal Service also has filed a cross-claim against the Union, similarly seeking declaratory relief and an injunction concerning the Union's use of such internal

---

1. Congress enacted the Private Express Statutes, 18 U.S.C. §§ 1693–1699, 39 U.S.C. §§ 601–606, pursuant to its constitutional authority to establish "Post Offices and Post Roads." U.S. Const., Art. I, § 8, cl. 7. "These statutes establish the postal monopoly and generally prohibit carriage of letters over postal routes without the payment of postage to the United States Postal Service." *Regents*, 485 U.S. at 591, 108 S.Ct. at 1407.

mail systems without the payment of postage.

## II. Procedural Issues

### A. Subject Matter Jurisdiction

■ Defendant Teachers Union moves to dismiss this action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Union argues that the School asserts no independent basis for jurisdiction against either defendant, and that, accordingly, the entire action must be dismissed. The Union insists that the suit between the School and the Postal Service lacks the constitutionally required case or controversy[2] because the two parties seek the same legal outcome, viz., a finding that delivery of Union correspondence without the payment of postage violates federal law. The Union's position is untenable. In so arguing, the Union asks this court to substitute semantic distinctions for substantive realities. Merely because the School and the Postal Service prefer to have the federal question resolved in the same fashion does not alter the parties' truly adversarial relationship. By threatening to prosecute the School for violation of the Postal Express Statutes, the Postal Service has made eminently clear its intention to seek legal recourse against the School if it complies with the arbitrator's award and resumes intra-union mail delivery. In light of this threat of litigation, the parties' mere confluence of desired result does not make the actual controversy between them any less real. The court thus finds that an actual controversy exists between the School and the Postal Service, one which invokes the jurisdiction of this court pursuant to sections 1331 and 1339 of Title 28.

■ Next, the Teachers Union argues that the only "federal question" presented in the School System's complaint to support jurisdiction against the Union is in reality a federal defense to the state law arbitration proceeding. Under the rigid doctrine of the well-pleaded complaint, the federal question must appear on the face of the School's complaint. *See, e.g., Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). *Mottley*'s rule that anticipation of a federal defense may not be used to invoke this court's general federal question jurisdiction also applies in the context of a declaratory judgment action. *Skelly Oil Company v. Phillips Petroleum Company*, 339 U.S. 667, 673–74, 70 S.Ct. 876, 879–80, 94 L.Ed. 1194 (1950). *"Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking' " (citations omitted). *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16, 103 S.Ct. 2841, 2850, 77 L.Ed.2d 420 (1983). This rule follows from the language of the Declaratory Judgment Act,[3] which merely "expands the remedies available in the district courts without expanding their jurisdiction." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98, 98 S.Ct. 2620, 2643, 57 L.Ed.2d 595 (1978) (Rehnquist, J., concurring).

The School's claim against the Union appears to amount to a request that this court declare that federal law (the Postal Express Statutes) insulates the School from a nonfederal claim that the Union may have—an attempt to invoke the district court's jurisdiction which *Mottley* and *Skelly* do not sanction. In *Franchise Tax Board*, however, the Supreme Court "clarified" the rigid rule of *Mottley* by stating that a case also arises under federal law "where the vindication of a right under state law *necessarily turn[s]* on some construction of federal law" (emphasis added). *Franchise*, 463 U.S. at 9, 103 S.Ct. at 2846.

---

2. It is clear to this court, and apparently to the Teachers Union which made no such objection in its Brief, that the School's suit against the Postal Service properly invokes federal court jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question jurisdiction) and 28 U.S.C. § 1339 (jurisdiction under the postal laws).

3. The DJA provides: "In a case of actual controversy *within its jurisdiction,* ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration ... (emphasis added). 28 U.S.C. § 2201.

It is clear that this provision was not intended to empower lower federal courts with jurisdiction over every state cause of action in which a federal issue is presented. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). Indeed, this court is mindful of the Supreme Court's caveat in *Merrell Dow* that the quoted statement from *Franchise* "must be read with caution ... [in light of that Court's] conclu[sion] that federal jurisdiction was lacking." *Id.* 478 U.S. at 809, 106 S.Ct. at 3232–33.

The *Franchise* case is to be distinguished from this proceeding, however. In *Franchise*, the Court found that the complaint presented "many reasons completely unrelated to the provisions and purposes of [the federal statute] why the [plaintiff] may or may not be entitled to the relief it seeks." *Franchise*, 463 U.S. at 26, 103 S.Ct. at 2855. Here, the only issue to be decided in the Union's state action against the School is the question whether federal law permits the carriage of correspondence without the payment of postage. The interpretation of the parties' collective bargaining agreement is not in dispute. Indeed, if this court upholds the legal position urged by the Postal Service, the state court action becomes moot since the agreement contains an expurgation clause that cleanses the document of provisions found contrary to state or federal law.[4] Thus the federal question is not simply one element of the Union's state cause of action; it is the only element, the resolution of which "necessarily turns" upon the interpretation of federal law. The School System's action for declaratory and injunctive relief against the Teachers Union thus invokes this court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Teachers

Union's Motion to Dismiss is, accordingly, DENIED.

### B. Abstention

The Teachers Union argues in the alternative that, even if this court has jurisdiction over the School's action, it should decline to adjudicate the matter because of the policies embodied in the *Burford*[5] and *Colorado River*[6] abstention doctrines. The court considers each doctrine in turn.

### 1. Burford Analysis

■ The Supreme Court recently indicated under what circumstances *Burford*-type abstention is appropriate:

> [w]here timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern" (citations omitted).

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, — U.S. —, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

The Teachers Union argues that the State of Indiana's "strong policy supporting arbitration" and its "fundamental interest in education" represent "issues of substantial public import" which the State's courts can better adjudicate. Teachers Union Reply Brief at 27, 29, 33.

The *New Orleans* case reminds that a federal court's abstention from the exercise

---

**4.** The pertinent language from Article XXIX, paragraph C provides:

Should any article or portion [of the agreement] be declared illegal by a court of competent jurisdiction or be in conflict with any state or federal statute or regulation that has the effect of a statute, such article or portion thereof shall be deleted from the contract to the extent it violates the law, but the remain-

der of the contract shall remain in full force and effect.

Complaint, Exhibit A at 3–4.

**5.** *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**6.** *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

of jurisdiction remains the exception not the rule. *New Orleans*, 109 S.Ct. at 2513. Because this proceeding does not fit into the "carefully defined ... areas in which [*Burford*] ... abstention is permissible," *id.*, this court declines to abstain from exercising its jurisdiction. "*Burford* is concerned with protecting complex state administrative processes from undue federal interference." *Id.* 109 S.Ct. at 2514. This case, however, implicates no such principles. This case does not require the court to resolve "difficult questions of state law," or to "disrupt" the state's administrative mechanism for promoting education, arbitration or other matters of "substantial public concern." This action merely requires that the court determine whether the School's delivery of Union correspondence—in accordance with the parties' collective bargaining agreement—without the payment of postage violates the Private Express Statutes. The court is hard-pressed to understand how a district court's interpretation of federal law in this case could unduly interfere with the State's concededly substantial interest in education or arbitration, especially in view of the parties' own contractual statement that unlawful provisions are automatically to be deleted from their agreement. The court disagrees with the Union's position that this question implicates momentous issues of state policy which "rise[ ] above the outcome [in] this specific litigation."

### 2. Colorado River Analysis

■ *Colorado River* abstention involves the "dismissal [or stay] of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Such abstention is warranted only in "exceptional" circumstances. *Id.* The Supreme Court counsels that among the factors to be considered in the *Colorado River* analysis are whether either court assumed jurisdiction over a res or property; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; the order in which jur-

isdiction was obtained by the concurrent forums; whether federal law provides the rule of decision on the merits; and whether either forum is probably inadequate to protect the rights of the parties. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 19, 23, 26, 103 S.Ct. 927, 938, 941, 942, 74 L.Ed.2d 765 (1983).

A district court's decision whether to abstain a federal proceeding "because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance *heavily weighted* in favor of the exercise of jurisdiction" (emphasis added). *Id.* at 16, 103 S.Ct. at 937.

Applying the relevant factors, the court finds that this case does not present the requisite "exceptional circumstances" justifying abstention under *Colorado River*. No court assumed jurisdiction over any res; the parties have not contended that the federal forum is any less convenient than the state forum; the federal action was filed first in time; and federal law provides the rule of decision on the merits. "[F]ar from supporting [abstention, the court believes these factors] actually counsel against it." *Id.* at 19, 103 S.Ct. at 938. Accordingly, the Teachers Union's Motions to Abstain and Stay the federal court proceeding is hereby DENIED.

The Court hereby ORDERS that, pursuant to its Order of February 6, 1990, the defendant Fort Wayne Education Association shall have thirty (30) days from the date of this Order to respond to the motions for summary judgment. IT IS SO ORDERED.