VALLEY NATIONAL BANK, and
Wayne Title, Inc., Plaintiffs,

v.

Jaynee LAVECCHIA, in her official capacity as Commissioner of the New Jersey Department of Banking and Insurance, Defendant.

No. CIV. A. 99–1222.

United States District Court,
D. New Jersey.

Aug. 13, 1999.

Ronald D. Coleman, Marc D. Crowley, Benjamin E. Haglund, Thomas R. Hower, Pitney, Hardin, Kipp & Szuch, Florham Park, NJ, for plaintiffs Valley National Bank and Wayne Title Inc.

Peter Verniero, Atty. Gen. of NJ, Thomas M. Hunt, Deputy Atty. Gen. of New Jersey, R.J. Hughes, Trenton, NJ, for Defendant Jaynee La Vecchia, in her capacity as Commissioner of the Dept. of Banking and Insurance.

F. Thomas Eck IV, Washington, DC, for Amicus Curiae Office of the Comptroller of the Currency.

## OPINION

WALLS, District Judge.

### Factual Background

Plaintiff Valley National Bank ("Valley") owns all of the shares of plaintiff Wayne Title, Inc. ("Wayne"). Valley acquired Wayne to allow it to sell insurance products. Defendant Jaynee LaVecchia ("the Commissioner") is the Commissioner of the New Jersey Department of banking and Insurance ("the Department").

Valley has opened a branch in Riverdale, New Jersey, a town with a population of 2,370 people, and Wayne Title will also be located in Riverdale. Wayne Title has entered into an employment agreement with a licensed insurance producer to sell title insurance. On November 5, 1998, Valley applied to the Office of the Comptroller of the Currency ("OCC") to establish Wayne Title as an operating subsidiary to sell title insurance and other insurance from Valley's branch in Riverdale. The OCC advised Valley that it would await the grant of an insurance license from the Department before acting on Valley's application.

On November 10, 1998, Valley applied to the Department for Wayne Title to be licensed as an insurance provider for the purposes of selling title insurance. The application was returned to Valley, rejected for technical reasons. On December 16, 1998, Valley resubmitted its application to the Department. During its communications with Valley, the Department informed Valley that it would reject the application because it regards Wayne as a "bank, trust company, bank and trust company or other lending institution, mortgage service, mortgage brokerage or mortgage guaranty company" for purposes of N.J.S.A. 17:46B–30.1 (a statute applicable to national banks doing business in a place with fewer than 5,000 inhabitants), and that it would enforce this statute against Valley and Wayne.

The plaintiffs filed a complaint in this Court on March 19, 1999, for a declaration that N.J.S.A. 17:46B–30.1 is preempted by Article VI, Clause 2, of the United States Constitution ("the Supremacy Clause") and by 12 U.S.C. § 92 ("Section 92"). The complaint also seeks to permanently enjoin the Commissioner from enforcing N.J.S.A. 17:46B–30.1 to the extent it is preempted by Section 92, and to permanently enjoin the Commissioner from otherwise restricting or interfering with the rights granted to Valley under Section 92. On April 22, 1999, the Commissioner, by letter, denied to Valley a license based on N.J.S.A. 17:46B–30.1. On April 30, 1999 Valley opened a branch in Riverdale, New Jersey. On May 4, 1999, Valley filed a motion for summary judgment on its request for declaratory and injunctive relief.

### Legal Standard for Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant and it is material if, under the substantive law, it would affect the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.

*See Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party opposing a motion for summary judgement must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.* 624 F.2d 1169, 1181 (3d Cir.1980).

### Analysis

Section 92 provides that:

> In addition to the powers now vested by law in national banking associations organized under the laws of the United States and any such association located and doing business in any place the population of which does not exceed five thousand inhabitants ... may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life or other insurance company authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance ....

12 U.S.C. § 92. Acting pursuant to this Congressional authorization, the OCC has promulgated 12 C.F.R. § 7.1001, which instructs that:

> Pursuant to 12 U.S.C. § 92, a national bank may act as an agent for any fire, life or other insurance company in any place the population of which does not exceed 5,000 inhabitants. This provision is applicable to any office of a national bank when the office is located in a community having a population of less than 5,000, even though the principal office of such bank is located in a community whose population exceeds 5,000.

On the other hand, N.J.S.A. 17:46B–30.1 declares that in New Jersey:

> No bank, trust company, bank and trust company or other lending institution, mortgage service, mortgage brokerage or mortgage guaranty company or any service company of or for any lending institution or any officer or employee of the foregoing shall be licensed as or permitted to act as an insurance producer for a title insurance company ....

### 1. *Subject Matter Jurisdiction*

The defendant contends that this Court lacks subject matter jurisdiction over this action. The plaintiffs assert the Court's jurisdiction under 28 U.S.C.A. § 1331 and 28 U.S.C. § 2201. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 2201 provides that "In a case or controversy within its jurisdiction ... any court of the United States, ... may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."

The defendant argues that the declaratory judgment provisions of § 2201 are not a basis, alone, for federal court jurisdiction over a matter. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Public Service Comm'n v. Wycoff,* 344 U.S. 237, 248, 73 S.Ct. 236, 242–43, 97 L.Ed. 291 (1952). The defendant also posits that an assertion of federal preemption is not, alone, a basis for subject matter jurisdiction under 28 U.S.C. § 1331 because it does not automatically create a federal question. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Fleet Bank v. Burke,* 160 F.3d 883 (2d Cir.1998); *Glass*

*Molders, Pottery, Plastics, and Allied Workers Int'l Union, AFL–CIO v. Wickes,* 707 F.Supp. 174 (D.N.J.1989).

The cases relied on by defendant are those where either the plaintiff filed a state law claim in state court and the defendant attempted to remove the cause to federal court based on a preemption argument, or where the plaintiff attempted to bring what was essentially a state law claim in federal court under the assumption that the defendant would invoke a federal law or right as a defense. Such removal has been denied because of the "well-pleaded complaint" rule: a complaint invoking federal question jurisdiction must assert the federal question as part of the plaintiff's claim. *Fleet Bank,* 160 F.3d at 885–86. Under the rule, a plaintiff is master of his complaint and may avoid federal jurisdiction by exclusive reliance on state law. A defendant cannot force the plaintiff into federal court based on a preemption argument.[1]

A party can invoke federal court jurisdiction when it seeks "injunctive relief to prevent state officials from interfering with a federal right." *Fleet, supra.* at 888; *see also Ex parte Young,* 209 U.S. 123, 160–62, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights ... [a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 96 n.

14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *see also Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199–200, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 153, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 19–22, and n. 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

In *Freehold Cogeneration Assoc. L.P. v. Bd. of Regulatory Com'rs of State of N.J.,* an energy company sought a declaratory judgment that the New Jersey Board of Regulatory Commissioners was preempted by the Public Utility Regulatory Policies Act from modifying the terms of a previously approved power purchase agreement. 44 F.3d 1178 (3d Cir.1995), *cert. denied, Jersey Cent. Power & Light Co. v. Freehold Cogeneration Assoc., L.P.,* 516 U.S. 815, 116 S.Ct. 68, 133 L.Ed.2d 29 (1995). The district court granted the Board's motion to dismiss, holding that it lacked subject matter jurisdiction over the action. *Id.* On review, the Third Circuit noted that because "Freehold complains that the [Board] has interfered with its federally-granted right to be exempt from certain utility-type state regulation ... [t]he district court possessed jurisdiction to hear Freehold's preemption claim pursuant to 28 U.S.C. § 1331." *Id.* at 1185.

Similarly, the plaintiffs here seek both declaratory and injunctive relief, claiming that the state's enforcement of N.J.S.A.17:46B–30.1, which resulted in the denial of their license to sell title insurance, interferes with a federal right granted by Section 92. The Court finds that it has subject matter jurisdiction to hear this action.[2]

---

1. The exception to this rule is that federal court jurisdiction can be found when federal law completely preempts the state law in question. *See, e.g., Caterpillar, Inc. v. Williams,* 482 U.S. 386, 386–87, 107 S.Ct. 2425, 2426, 96 L.Ed.2d 318 (1987); *Fleet Bank, N.A. v. Burke,* 160 F.3d 883, 886–887 (2d Cir.1998).

2. The defendant's brief contains a major argument that while Valley rightfully stated that it "had a license to open a branch in a place with less than 5,000 inhabitants," it was not actually "located and doing business" in a place of fewer than 5,000 inhabitants within the meaning of Section 92 and therefore lacked standing to bring this suit. The defendant's brief containing this argument was

2. *Whether Section 92 preempts N.J.S.A. 17:46B–30.1*

The plaintiffs claim that the quoted portion of 17:46B–30.1 is preempted by Section 92. In *Barnett Bank v. Nelson*, the Supreme Court stated that Section 92 confers a "broad, not a limited" permission for national banks to sell all types of insurance. 517 U.S. 25, 32, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). The *Barnett* court held that Section 92 is not subject to limitation by a state statute that would prevent or significantly interfere with the national bank's exercise of its powers. *Id.* at 32–33, 116 S.Ct. 1103. The Sixth Circuit has held that a Kentucky statute which prohibited national banks from acting as an insurance agent or broker except for limited types of insurance was preempted. *See Owensboro Nat'l Bank v. Stephens*, 44 F.3d 388 (6th Cir.1994), *cert. denied*, 517 U.S. 1119, 116 S.Ct. 1350, 134 L.Ed.2d 519 (1996). Several other cases have held that state statutes which interfere with certain rights of national banks to sell insurance are preempted by Section 92. *See e.g., First National Bank of Boston, et al. v. Ruthardt*, Case No. 96–12075 PBS, D.Mass., Order for Declaratory judgment, December 19, 1996; *Shawmut Bank Connecticut v. Googins*, 965 F.Supp. 304 (D.Conn.1997); *New York Bankers Ass'n v. Levin*, 999 F.Supp. 716 (W.D.N.Y.1998).

The plaintiffs argue that N.J.S.A 17:46B–30.1 stands as an absolute bar to the licensure of any bank seeking to act as an agent for a title insurance company. Therefore, they continue, it directly conflicts with Section 92 and is preempted as a matter of federal law. They argue that they are entitled to an injunction against the Commissioner enjoining her from enforcing the restrictions and limitations contained in N.J.S.A. 17:46B–30.1 with respect to national banks located and doing business in small towns. The plaintiffs argue that the term "or other insurance" in Section 92 means that Congress intended for the statute to apply to title insurance.

The defendant argues that because the statute specifies some types of insurance ("fire, life") and does not enumerate title insurance, an intention not to include title insurance within its purview is revealed. They state that "if (sic) is only reasonable to believe that if Congress had meant to allow banks to sell title insurance, it would have specifically so stated, as it did with other forms of insurance."

■ This argument fails. There is a cardinal rule of statutory construction under which a court must give effect to the plain meaning of a statute. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("... courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). This Court finds that by using the words "or other insurance" and not carving out an exception, Congress meant what it said, any other insurance authorized by the state to do business in that state.

The Court notes that the Office of the Comptroller of the Currency ("OCC") has filed an *amicus curiae* brief on behalf of the plaintiffs. The OCC relies on *American Land Title Ass'n v. Clarke*, 968 F.2d 150 (2d Cir.1992), *cert. denied*, 508 U.S. 971, 113 S.Ct. 2959, 125 L.Ed.2d 660 (1993), that the language in Section 92 "makes inescapable the conclusion that Congress intended this provision to apply to 'any ... insurance company,' and a title insurance company surely is an insurance company"; *see also New York Bankers Ass'n v. Levin*, 999 F.Supp. 716, 719 (W.D.N.Y.1998) (finding that Section 92 allows national banks located and doing business in a place of 5,000 or fewer inhabitants to sell any type of insurance). The OCC has also published that "[t]he authority to sell insurance under Section 92 includes the authority to sell title insurance,

filed on April 23, 1999. Valley opened its Riverdale, New Jersey branch on April 30,

1999, thus curing this potential defect in its claim.

as agent." OCC Conditional Approval No. 275, 1998 OCC Ltr.LEXIS 30 (April 22, 1998); *see also* OCC Corporate Decision No. 97–13, n.56, 1997 OCC Ltr,LEXIS 10 (February 27, 1997).

### 3. *Tie-in Arrangements*

On public policy grounds, the Commissioner has suggested that her denial of the plaintiffs' application is justified as a means to forestall tie-in sales or other tying arrangements[3]. The Court finds that this is not a valid justification because such arrangements are barred by other state regulations which do not conflict with Congress's sole jurisdiction over the regulation of national banks.[4]

### Standard for a Permanent Injunction

■ The Court must consider the following factors to determine whether to grant a preliminary injunction: (1) a likelihood of success on the merits; (2) the possibility of irreparable harm to the plaintiff if the injunction is not granted; (3) the possibility of irreparable harm to other interested parties if the injunction is granted; (4) the public interest and (5) the posting of a bond by the moving party. *See Opticians Ass'n of America v. Indep. Opticians of America*, 920 F.2d 187, 191–92 (3d Cir.1990); *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir.1990). The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a likelihood of success. *See Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

The plaintiffs argue that there is no real factual dispute here; this matter turns solely on legal determinations. They assert that they have shown actual success on the merits. They further claim irreparable injury because they are being denied the opportunity to exercise their right to sell title insurance. The plaintiffs also declare that because the defendant is the state, "it is virtually assured that the plaintiffs will never be able to collect money damages for their losses," and that Congress, through the enactment of Section 92, has shown that public policy will not be served by the enforcement of N.J.S.A. 17:46B–30.1.

■ The Court agrees and concludes that the plaintiffs have shown inevitable actual success on the merits of their claims. Irreparable injury has been shown by the state's continued interference with the plaintiffs' federal right to sell title insurance pursuant to Section 92. The Court finds that there is no possibility of irreparable harm to other parties if the injunction is granted, and that the public interest in having sufficient outlets to purchase title insurance will be furthered if the injunction is granted.

### Conclusion

The Court finds that it has subject matter jurisdiction to hear this action. The Court further finds that because that part of N.J.S.A. 16:46B–30.1 reviewed is in direct conflict with 12 U.S.C. § 92, it is preempted under the Supremacy Clause of the United States Constitution. The Court permanently enjoins the New Jersey Commissioner of Banking and Insurance from enforcing N.J.S.A. 17:46–30.1 to

---

**3.** A typical tie-in arrangement would be where a bank makes the selection of a particular (usually affiliated) title insurance company or insurance producer a condition precedent to the grant of any mortgage loan.

**4.** These other regulations include the second half of *N.J.S.A. 17:46B–30.1*, which prohibits certain companies from making the selection of a particular title insurance company or insurance producer a condition precedent to the granting of any mortgage loan, *N.J.S.A.*

*17:46B34*, which forbids the payment of a commission, i.e. to a referring person or entity, in connection with the sale of title insurance, except as part of the regular compensation of an insurance agent or employee, and *N.J.S.A. 17:46B–35*, which forbids the use of a "rebate, discount, abatement, credit or reduction of premium or special favor, advantage, or other benefit" in return for any consideration not provided for in the title policy itself or by permission of the Commissioner.

the extent that it is preempted by federal law, 12 U.S.C. § 92. The Court orders that this permanent injunction is conditioned by the plaintiffs posting a bond in the amount of five thousand dollars.

### ORDER

This matter is before the Court on the motion of plaintiff Valley National Bank, Inc. for summary judgment on its petition for declaratory and injunctive relief from certain actions of defendant Jaynee Lavecchia, in her capacity as Commissioner of the New Jersey Department of Banking and Insurance. The motion is granted.

The Court finds that it possesses subject matter jurisdiction to hear this matter. The Court further finds that because that part of N.J.S.A. 17:46B–30.1 reviewed is in direct conflict with 12 U.S.C. § 92, it is preempted under the Supremacy Clause of the United States Constitution. The Court permanently enjoins the New Jersey Commissioner of Banking and Insurance from enforcing N.J.S.A. 17:46B–30.1 to the extent that it is preempted by federal law, 12 U.S.C. § 92. The Court further orders that this permanent injunction is conditioned by the plaintiffs posting a bond in the amount of five thousand dollars.